KRISTEN CLARKE
Assistant Attorney General
SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
R. TAMAR HAGLER (CA Bar No. 189441)
Deputy Chief
ONESHIA S. HERRING (NC Bar No. 41308)
Trial Attorney
    U.S. Department of Justice
    Civil Rights Division
    Housing and Civil Enforcement Section
    150 M Street, NE, 8.1130 – 4 CON
    Washington D.C. 20530
    Telephone: (202) 353-4132
    Facsimile: (202) 514-1116
    E-mail: Oneshia.Herring@usdoj.gov
TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Chief, Civil Division
KAREN P. RUCKERT (CA Bar No. 315798)
Chief, Civil Rights Section
ACRIVI COROMELAS (CA Bar No. 298305)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, CA 90012
    Telephone: (213) 894-2404
    Facsimile: (213) 894-7819
    E-mail: Acrivi.Coromelas@usdoj.gov
Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FILOMENO HERNANDEZ, RAMIN AKHAVAN, BONNIE BRAE INVESTMENT SERVICES LLC, and WESTLAKE PROPERTY SERVICES LLC,<br><br>    Defendants. | No. 2:20-cv-00327-DSF-AFM<br><br>**CONSENT DECREE**<br><br>Honorable Dale S. Fischer<br>United States District Judge |

# I. INTRODUCTION

This action was filed by Plaintiff United States of America ("United States") on January 13, 2020 to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 ("Fair Housing Act" or "FHA").

The United States alleges that Defendant Filomeno Hernandez ("Hernandez"), Defendant Ramin Akhavan ("Akhavan"), Defendant Bonnie Brae Investment Services LLC ("Bonnie Brae"), and Defendant Westlake Property Services LLC ("Westlake") (collectively, "Defendants") have engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, and denied to a group of persons rights granted by the Fair Housing Act that raise an issue of general public importance.

The United States alleges that, from at least 2006 through the present, Defendant Hernandez has subjected female tenants of residential rental properties, which are owned by Defendants Akhavan, Bonnie Brae, and Westlake (collectively, "Owner Defendants"), to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions.

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

Plaintiff United States and Defendants have agreed that the claims against Defendants should be resolved without further litigation. In so doing, Defendants neither admit nor deny any allegations contained herein or in the United States' complaint. The Parties consent to the entry of this Consent Decree, as shown by the signatures below.

**Accordingly, it is hereby ADJUDGED, ORDERED and DECREED as follows:**

## II. INJUNCTIVE RELIEF

**A.     Prohibition Against Discrimination and Retaliation Under the FHA**

1.     Defendants, their officers, agents, employees, transferees, and successors

are enjoined, with respect to the rental of units in the Subject Properties,[1] from:

    a.    Refusing to rent or sell a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental or sale of a dwelling, or otherwise making unavailable or denying a dwelling to any person because of sex;

    b.    Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex;

    c.    Making any statement, oral or written, in connection with the rental or sale of a dwelling, that expresses or indicates any preference, limitation, or discrimination, or an intent to make any such preference, limitation, or discrimination, on the basis of sex; or

    d.    Coercing, intimidating, threatening, or interfering with any persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act, including by retaliating against any persons exercising their rights under this Consent Decree.

**B.     Prohibition Against Management of Residential Properties**

2.     Upon entry of this Consent Decree, Defendant Hernandez's employment as property manager at the Subject Properties is terminated. Within 90 days of the effective date of this Consent Decree, he is required to vacate his residence at 729 South Bonnie Brae Street in Los Angeles.

3.     Defendant Hernandez is permanently enjoined from directly or indirectly

---

[1] "Subject Properties" are 720 South Westlake Avenue and 729 South Bonnie Brae Street in Los Angeles, California.

performing any Property Management Responsibilities[2] at the Subject Properties or at any residential rental property.

4. Except as permitted by Paragraph B.2, Defendant Hernandez is enjoined from entering the Subject Properties. This prohibition includes, but is not limited to, entry into any dwelling unit, office, basement, attic, communal space, yard, parking area, and garage.

**C.  Prohibition of Contact with Aggrieved Persons, Witnesses, and Current or Prospective Tenants**

5. Defendants Hernandez and Akhavan (collectively, "Individual Defendants") are enjoined from contacting or communicating,[3] either directly or indirectly, with any person identified by the United States as an Aggrieved Person (as defined below) in this action or a witness identified by the United States. Defendant Akhavan is permitted to contact or communicate with Aggrieved Persons or witnesses identified by the United States who reside in Bonnie Brae or Westlake as needed to perform Property Management Responsibilities, and any such contact or communication will be reported in Owner Defendants' three month reports described in Section VI.

6. In the event that Defendants Hernandez or Akhavan inadvertently or unintentionally initiate any contact with any individual within the categories identified above, or another person initiates such contact between Defendants Hernandez or Akhavan and any such individual, Defendants Hernandez and Akhavan will immediately discontinue the contact or communication and take all reasonable steps to avoid any

---

[2] "Property Management Responsibilities" include the following: showing or renting housing units; processing rental applications; performing or supervising repairs or maintenance; determining tenant eligibility for subsidies or waivers of fees and rents; determining whom to rent to, whom to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; entering rental units; overseeing any aspects of the rental process; handling mail, or engaging in any other property-related activities that involve, or may involve, personal contact with tenants or prospective tenants.

[3] Contact or communication includes, but is not limited to, physical contact, verbal contact, telephone calls, e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communications made through third parties.

3

further contact or communication.

7. If Defendants Hernandez or Akhavan violate any of the provisions of this Consent Decree, the United States may seek any and all available remedies for those violations, including instituting a civil contempt proceeding.

### III. RETENTION OF INDEPENDENT PROPERTY MANAGER

8. Within 30 days of the effective date of this Consent Decree, the Owner Defendants will retain an Independent Manager,[4] to be approved in writing in advance by the United States, to be the on-site property manager at the Subject Properties. Defendant Akhavan is permitted under this Consent Decree to manage the properties in conjunction with the on-site Independent Manager. For example, Defendant Akhavan is permitted to meet prospective tenants, process applications, help make decisions on to whom to rent, and collect rent. Defendant Akhavan may engage in these on-site management activities only during business hours on weekdays. Additionally, Defendant Akhavan is permitted to enter units to assess any problems in the units, except that Defendant Akhavan is not permitted to enter the unit of any Aggrieved Person or witness identified by the United States.

9. If, after retaining an Independent Manager, the Owner Defendants wish to change the Independent Manager for any reason, they shall submit the name of the prospective manager, in writing, to the United States for written approval at least 10 days prior to retaining the individual or entity.

10. Any Independent Manager retained in accordance with Paragraphs 8-9 shall be responsible for all Property Management Responsibilities (except those performed by Defendant Akhavan), including using the Independent Manager's name and telephone number for all rental advertisements.

11. The Independent Manager and Defendant Akhavan shall:

---

[4] An "Independent Manager" is an individual or entity experienced in managing rental properties and who has no current or past employment, financial, contractual, personal, or familial relationship with Defendants.

4

a. Implement, subject to the United States' approval, a written policy against sexual harassment, including a formal complaint procedure. A copy of this policy and procedure shall be provided to counsel for the United States within 30 days of the Owner Defendants' retention of an Independent Manager as outlined in Paragraph 8 above. This policy and procedure will be implemented within five days of notification from the United States to the Owner Defendants that the policy and procedure are satisfactory to the United States. At that time, the Owner Defendants will direct the Independent Manager to notify all new and current tenants of the policy and procedure. Within 10 days of this direction, the Independent Manager shall certify in writing to the United States that the policy and procedure have been implemented and shall provide a list of all tenants notified in accordance with this paragraph. Thereafter, the policy and procedure will be distributed to all new tenants at the time of lease signing. The policy must be provided to current and new tenants in English and Spanish.

b. Ensure that any persons who will be performing any duties with respect to the Subject Properties are familiar with the requirements of the FHA, particularly as they pertain to sexual harassment and other forms of sex discrimination (including through the training required by Section V), the written sexual harassment policy implemented pursuant to Paragraph 11.a, and this Consent Decree.

c. Post an "Equal Housing Opportunity" sign in any rental office or location through which dwellings at the Subject Properties are rented, which indicates that all dwellings are available for rent on a nondiscriminatory basis. An 11-inch by 14-inch poster that comports with 24 C.F.R. Part 110 will satisfy this requirement. Such poster will be placed in a prominent, well-lit location where it is easily readable.

           The sign must be posted in English and in Spanish. Defendants may use HUD Form 928, available in English at: https://portal.hud.gov/hudportal/documents/huddoc?id=928.1.pdf. HUD Form 928 is also available in Spanish at: https://www.hud.gov/sites/documents/FHEOPOSTER928SPANISH.PDF.

    d. Require that all advertising conducted for any of the Subject Properties in newspapers, telephone directories, radio, television, internet websites, social media, or other media, and all billboards, signs (including at the properties), pamphlets, brochures, and other promotional literature, include either a Fair Housing logo, the words "Equal Housing Opportunity Provider," and/or the following sentence: "We are an equal opportunity housing provider. We do not discriminate on the basis of race, color, national origin, religion, sex, familial status, or disability." The words or logo will be legible and prominently placed.

    e. Send to the United States within 30 days of the effective date of this Consent Decree, and every six months thereafter for the term of the Consent Decree, a list of all tenants.

    f. Maintain all rental records and allow the United States to inspect and copy such records upon reasonable notice.

    g. Provide upon reasonable notice any information reasonably related to compliance with this Consent Decree that is requested by the United States.

## IV. ACQUISITION OR TRANSFER OF INTEREST IN RESIDENTIAL RENTAL PROPERTIES

12. If, at any time during the effective period of this Consent Decree, any Defendant acquires a direct or indirect management, ownership, financial, or controlling

interest in any other residential rental property, such property will be subject to the applicable provisions of this Consent Decree. Within 30 days of acquiring such an interest, Defendants will notify counsel for the United States of the nature of their interest in the dwelling or property; the address of the property; the number of individual dwelling units at the property; and any other information required under this Consent Decree. Defendants will further provide the United States with copies of any documents memorializing the transfer in interest of the property.

13. If, prior to the effective date or at any time during the effective period of this Consent Decree, any Defendant sells or transfers the Subject Properties or another residential rental property to a bona fide, third-party purchaser in an arms-length transaction, such property will cease to be subject to this Consent Decree.[5] Regardless of any transfer of interest in all or part of the Subject Properties, Defendants shall remain liable for obligations under Sections II, VI, VII, VIII, and IX of this Consent Decree.

14. If, at any time during the effective period of this Consent Decree, any Defendant claims that his obligations under this Consent Decree have been terminated or changed because he sold or transferred one or more residential rental properties to a bona fide, third-party purchaser in an arms-length transaction, that Defendant will inform the United States[6] within 30 days of such transaction and provide the date of the sale or transfer, copies of the documents memorializing the sale or transfer, and contact information for the subsequent purchaser. Within 14 days of receipt by the United States

---

[5] For purposes of this Consent Decree, a "bona fide, independent third-party purchaser" is one with whom Defendants have no current or past financial, contractual, personal, or familial relationship. An "arms-length transaction" is one that has been arrived at in the marketplace between independent or non-affiliated persons, unrelated by blood or marriage, and with opposing economic interests regarding that transaction. A corporation or entity of which any Defendant, or any person related to any Defendant by blood or marriage, is an officer, partner, or agent, or in which any Defendant has an ownership, financial or controlling interest, is not a "bona fide, independent third-party purchaser," and any transaction involving such a purchaser will not qualify as an "arms-length transaction."

[6] All documents or other communications required by this Consent Decree to be sent to counsel for the United States shall be sent by email to Trial Attorney Oneshia Herring at oneshia.herring@usdoj.gov and Assistant United States Attorney Acrivi Coromelas at acrivi.coromelas@usdoj.gov, or as otherwise directed by the United States.

of such notice of a sale to a bona fide, third-party purchaser in an arms-length transaction, the United States shall provide written confirmation that the residential rental property is no longer subject to the terms of this Consent Decree.

15. If any transfer of interest in all or a portion of any residential rental property by any Defendant is not an arms-length transaction, Defendants will remain liable for any violation of this Consent Decree.

## V. EDUCATIONAL PROGRAM

16. Within 90 days of the effective date of this Consent Decree, the Individual Defendants will attend an in-person training on the Fair Housing Act, including the Act's provisions related to sexual harassment, other forms of sex discrimination, and discriminatory statements. The trainer or training entity must be qualified to perform such training, must be unconnected to Defendants, their employees, agents, or counsel, and must be approved in advance by the United States. Defendants will bear the cost of any expenses associated with this training. Defendant Hernandez's training will be in Spanish, or he will have a Spanish interpreter at the training. The Individual Defendants will obtain from the trainer or training entity a certificate of attendance signed by each individual who attended the training. The certificate shall include the name of the course, the date the course was taken, the subject matters covered in the course, and the length of the course and/or time within which the course was completed. The Individual Defendants will send a copy of this certificate to counsel for the United States within 10 days of the training.

17. All new agents or employees of the Owner Defendants, including agents or employees of the Independent Manager, who are involved in showing, renting, managing or maintaining any residential rental properties owned, managed, or operated by the Owner Defendants, and all employees or agents who supervise such persons, shall, within 30 days of commencing an employment or agency relationship with the Owner Defendants or the Independent Manager, be provided the training described in Paragraph 16, or participate in an online training on the Fair Housing Act, including the Act's

8

provisions related to sexual harassment and other forms of sex discrimination. The online training program must be approved in advance by the United States. New agents or employees who are provided online training will participate in an in-person training as described in Paragraph 16, within one year of commencing an employment or agency relationship with the Owner Defendants. The Owner Defendants will send a copy of the certificates of any training conducted under this paragraph to counsel for the United States within 10 days of said training.

## VI. REPORTING AND RECORD KEEPING

18. Defendants shall provide to the United States notification and documentation of the following events, no later than 10 days after their occurrence:

    a. Any change to the Owner Defendants' rules or practices regarding the written policy against sexual harassment or formal complaint procedure discussed in Paragraph 11.a;

    b. Any change to the Independent Manager, in accordance with Paragraphs 8-10;

    c. Any known information indicating that any Defendant, or any of his agents or employees, is in known violation of this Consent Decree; and

    d. Any known written or oral complaint against any Defendant, or any of any Defendant's agents or employees, regarding discrimination, harassment, retaliation, or other violation of this Consent Decree. If the complaint is made orally, Defendants shall maintain a log upon which they record the name of the complainant; the address and telephone number of the complainant; the date the complaint was received; the name of Defendants' employee or agent who received the complaint; the name of Defendants' employee or agent who is the subject of the complaint; the name of the property involved in the complaint; and a general description of the complaint. If the complaint is written, Defendants shall provide a copy of it with the notification. The

9

notification shall include the full details of the complaint, including the complainant's name, address, and telephone number. Defendants shall also promptly provide the United States all information it may request concerning any such complaint and shall inform the United States within 15 days of the substance of any resolution of such complaint.

19. Within 90 days of the effective date of this Consent Decree, and every three months thereafter for the duration of this Consent Decree, the Owner Defendants shall deliver to the United States a report containing information about their compliance efforts during the preceding reporting period, including but not limited to:

   a. Certification that the policy against sexual harassment and formal complaint procedure described in Paragraph 11.a has been implemented and is in effect;

   b. Photographs of each office or location in which rental activity is conducted showing the "Equal Housing Opportunity" signs, in accordance with Paragraph 11.c;

   c. A list of all residential rental properties in which Defendants have a direct or indirect management, ownership, financial, or controlling interest;

   d. Any rental advertisements, in accordance with Paragraph 11.d; and

   e. Written and sworn verification by Defendants that the Independent Manager and Defendant Akhavan perform, and have performed during the reporting period, all property management responsibilities at the Subject Properties as required by Section III.

20. In addition to the reports required above, Defendants shall submit a final report to the United States no later than 60 days before the expiration of this Consent Decree that contains all the information listed in Paragraph 19.

21. Pursuant to Paragraphs 13 and 14 above, any property that has been transferred to a third-party purchaser in an arms-length transaction, and in which no

Defendant retains any interest, ceases to be subject to this Consent Decree. After the notification of such sale, and the written confirmation by the United States contemplated by Paragraph 15, no Defendant will be required to submit information, as described in Paragraphs 18.a, 18.b, and 19, related to that property.

22. Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Consent Decree. Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents.

## VII. MONETARY DAMAGES AND OTHER RELIEF FOR AGGRIEVED PERSONS

23. The Defendants shall deposit in an interest-bearing escrow account $100,000 (pursuant and subject to the payment dates and terms set forth below) for the sole purpose of compensating those persons whom the United States determines may have been harmed by the Defendants' discriminatory housing practices (hereinafter "Aggrieved Persons"). This money shall be referred to as "the Settlement Fund." Within 10 days of the establishment of the Settlement Fund, Defendants shall submit proof to the United States that the Settlement Fund has been established. The Defendants shall fund the Settlement Fund as follows:

    a. $15,000 shall be deposited in the Settlement Fund within 10 days of the effective date of this Consent Decree;

    b. $85,000 shall be deposited in the Settlement Fund in 5 consecutive monthly installment payments each of $15,000 and a 6th final monthly installment payment of $10,000, each monthly installment paid on the 15th of each month starting the month following the Defendants' initial payment of $15,000.

    c. Within 5 days of the deadline for each of the payments required by Subparagraphs a and b above, Defendants shall file a status report

with the Court affirming that such payments were made.

24. Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth herein.

25. Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraph 23, above.

26. The United States shall investigate the claims of allegedly Aggrieved Persons and shall obtain sworn declarations from each Aggrieved Person setting forth the factual basis of the claim. Within 180 days of the date of the effective date of this Consent Decree, the United States shall inform Defendants as to its determination as to which persons are aggrieved and an appropriate amount of damages that should be paid to each such Aggrieved Person. Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest the United States' determination of who qualifies as an Aggrieved Person in this or any other proceeding. Defendants hereby agree that they will not seek to interfere with or oppose the United States' determinations regarding the Aggrieved Persons and the appropriate amount of damages paid to each Aggrieved Person.

27. In its letter informing Defendants of its determination, the United States shall inform Defendants of the amounts (plus accrued interest) that should be paid pursuant to its determination. Defendants shall, within 10 days of the receipt of the United States' determination or the final payment under Paragraph 23, whichever is later, deliver to counsel for the United States, by overnight mail, a separate check payable to each Aggrieved Person in the amounts determined.

28. When counsel for the United States has received a check from Defendants payable to an Aggrieved Person and received a signed release in the form of Attachment B from the aggrieved person, counsel for the United States shall deliver the check to the Aggrieved Person and the original, signed release to counsel for Defendants. No Aggrieved Person shall be paid until she has executed and delivered to counsel for the United States the release at Appendix A.

29. In no event shall the aggregate of all such payments exceed the sum of the Settlement Fund plus accrued interest.

30. The compensation required to be paid under this Section is a debt within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, Defendants shall not seek to discharge any part of this debt in bankruptcy.

31. If Defendants initiated any proceedings to evict or otherwise terminate the tenancy of any Aggrieved Person, the United States will determine whether such actions were retaliatory or otherwise taken in violation of the Fair Housing Act. To make this determination, the United States may request documents and information from Defendants relevant to such proceedings. Defendants shall provide the requested documents and information to the United States within 15 days of the request. Defendants agree not to contest the United States' determination that the proceedings were retaliatory or otherwise unlawful under the Fair Housing Act.

32. If the United States determines that any such proceedings were retaliatory or otherwise unlawful under the Fair Housing Act, it will inform Defendants and, upon request, Defendants will, within 10 days, take the following actions to expunge the records of such proceedings so that they do not adversely affect the relevant aggrieved person:

    a. Request that all three major credit bureaus[7] delete any information regarding the aggrieved person and any co-tenant attributable to the proceedings; and

    b. Move the appropriate courts to vacate any judgment obtained through the proceeding.

33. Defendants shall maintain all records relating to the actions taken in accordance with Paragraph 32 and shall promptly send to the United States copies of the credit bureau requests and court filings. Defendants shall also provide within 10 days

---

[7] Those bureaus are Equifax, Experian, and TransUnion.

1 any other documents or information requested by the United States that is necessary to
2 expunge the records of the aggrieved person(s).

### VIII. CIVIL PENALTY

34. Within 220 days of the effective date of this Consent Decree, Defendants will pay $5,000 to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C). The payment will be in the form of an electronic fund transfer in accordance with written instructions to be provided by the United States.

35. The civil penalty referenced in Paragraph 34 is a debt contemplated by 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss. Defendants shall not seek to discharge any part of this debt in bankruptcy.

36. In the event that Defendants, their agents or their employees engage in any future violation of the FHA, such violation(s) shall constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

### IX. ENFORCEMENT OF CONSENT DECREE

37. This Consent Decree is effective immediately upon its entry by the Court. For purposes of this Consent Decree, "effective date" shall refer to the date on which the Court enters the Consent Decree.

38. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce its terms, after which time the case shall be dismissed with prejudice. This Consent Decree shall be in effect for a period of 4 years from the date of its entry. The United States may move the Court to extend the duration of the Consent Decree in the event of intentional noncompliance with any of its terms, or if the interests of justice so require.

39. The United States may review compliance with this Consent Decree any time, including through testing of Defendants and their properties. Defendants agree to cooperate with the United States in any review of compliance. Upon reasonable notice, Defendants will permit counsel for the United States to inspect and copy all non-privileged records pertinent to this Consent Decree.

40. The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by any Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

41. Failure of the United States to insist upon strict performance of any provision of this Consent Decree shall not be deemed a waiver of the United States' rights or remedies or a waiver by the United States of any default by any Defendant in performance or compliance with any terms of this Consent Decree.

42. Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the Parties. Any other modifications to the provisions of this Consent Decree must be approved by the Court.

43. Each signatory hereto warrants that he or she is competent and possesses the full and complete authority to covenant to this Consent Decree on behalf of himself, herself, or the party that he or she represents.

44. The United States and Defendants will bear their own costs and attorneys' fees associated with this litigation.

45. The Parties agree that, as of the effective date of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in this Consent Decree. To the extent that any party has previously implemented a litigation hold to preserve documents, electronically-stored information, or things related to the matters described above, that party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves any party of any other obligations under this Consent

Decree, including, inter alia, Defendants' obligation to preserve documents under Paragraphs 22 and 33.

    IT IS SO ORDERED.

DATED: August 10, 2021

_____
Honorable Dale S. Fischer
UNITED STATES DISTRICT JUDGE

FOR THE PLAINTIFF THE UNITED STATES:

| | |
|---|---|
| TRACY L. WILKISON<br>Acting United States Attorney<br>Central District of California | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division | SAMEENA SHINA MAJEED<br>Chief,<br>Housing and Civil Enforcement Section |
| /s/ Karen P. Ruckert<br>KAREN P. RUCKERT<br>Assistant United States Attorney<br>Chief, Civil Rights Section, Civil Division | /s/ R. Tamar Hagler<br>R. TAMAR HAGLER<br>Deputy Chief<br>Housing and Civil Enforcement Section |
| _____<br>ACRIVI COROMELAS<br>Assistant United States Attorney<br>Civil Rights Section, Civil Division | _____<br>ONESHIA S. HERRING<br>Trial Attorney<br>United States Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br><br>Attorneys for the United States of America |

16

1  FOR DEFENDANTS:
2
3  DEFENDANT
4  FILOMENO HERNANDEZ
5
6  DEFENDANT
7  RAMIN AKHAVAN
8
9  RAMIN AKHAVAN FOR
10 DEFENDANT BONNIE BRAE
   INVESTMENT SERVICES LLC
11
12
13 RAMIN AKHAVAN FOR
   DEFENDANT WESTLAKE
14 PROPERTY SERVICES LLC
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A
## GENERAL RELEASE OF CLAIMS

In consideration for and contingent upon the payment to me of $_____, under the Consent Decree entered into in *United States v. Hernandez et al.*, No. 2:20-cv-00327-DSF-AFM (C.D. Cal.), I hereby release and forever discharge Filomeno Hernandez, Ramin Akhavan, Bonnie Brae Investment Services LLC, and Westlake Property Services LLC from any and all claims, legal or equitable, that I have or may have had against them arising out of the facts and circumstances of the action named above as of the effective date of the Consent Decree.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Executed this _____, 2021.

Signature

Print Name

## RELEASE OF CLAIMS FOR INDIVIDUALS WITH PENDING LAWSUITS

In consideration for and contingent upon the payment to me of $_____, under the Consent Decree entered into in *United States v. Hernandez et al.*, No. 2:20-cv-00327-DSF-AFM (C.D. Cal.), I hereby release and forever discharge Filomeno Hernandez, Ramin Akhavan, Bonnie Brae Investment Services LLC, and Westlake Property Services LLC from any and all claims, legal or equitable, that I have or may have had against them arising out of the facts and circumstances of the action named above as of the effective date of the Consent Decree.

I further hereby release and forever discharge Filomeno Hernandez, Ramin Akhavan, Bonnie Brae Investment Services LLC, and Westlake Property Services LLC from any and all claims, legal or equitable, that I have or may have had against them arising out ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as of the effective date of the Consent Decree, and I further agree to dismiss such causes of action with prejudice. I do not release and forever discharge Filomeno Hernandez, Ramin Akhavan, Bonnie Brae Investment Services LLC, and Westlake Property Services LLC from any and all claims, legal or equitable, that I have or may have had against them arising out ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Executed this _____, 2021.

Signature

Print Name